[Cite as *State v. Kurtz*, 2013-Ohio-2999.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99103**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MICHAEL KURTZ

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-556138

**BEFORE:**   Jones, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** July 11, 2013

**ATTORNEY FOR APPELLANT**

John T. Castele
614 West Superior Avenue
Suite 1310
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Kevin R. Filiatraut
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Michael Kurtz, appeals his conviction for felonious assault.   We affirm.

{¶2} In 2011, Kurtz was charged with one count each of kidnapping, attempted rape, and felonious assault, and two counts each of rape and gross sexual imposition; each count contained a sexually violent predator specification.   The case proceeded to a bench trial.   At the conclusion of trial, the court convicted Kurtz of the single count of felonious assault but acquitted him of all other charges.

{¶3} The following facts pertinent to the felonious assault conviction were presented at trial.

{¶4} The victim testified that, in October 2011, she was employed as a receptionist at a temporary hiring agency, Shamrock Staffing, in Bedford Heights.   She used the internet in her daily life and admitted that she often had anonymous internet conversations with people she met on Facebook and Craigslist.   These conversations were of a sexual nature and were occasionally also of a violent sexual nature.   The victim testified that she had no intention of ever personally meeting anyone she conversed with on the computer.

{¶5} On October 24, 2011, the victim received an instant Facebook message from "Mark Wilson," which stated that he came across emails the two of them had exchanged in 2010.   "Mark" wanted to know if she was still interested in rough sex.   "Mark" divulged that he went by the user name "domdaddy" and he and the victim started up a

sexual conversation. The two discussed that she was alone at work and would be until later that afternoon. The victim testified that she thought "Mark" was a "black man" because of his profile picture.

{¶6} Later that day, a white man, later identified as Kurtz, came into Shamrock and said he wanted to fill out an application. The victim testified she had never seen the man before. Kurtz asked the victim, "do you remember me" and advanced towards her, pushing her. He pushed her again and proceeded to attack her. The victim testified that the man punched her "really hard in the vagina," "tried to bite her nipples off," and "took his belt off and whipped my butt with it." The victim testified the entire attack took five to seven minutes before ringing phones scared the man away.

{¶7} The victim spoke with her manager, called police, and went to the hospital.

{¶8} The day after the incident, the victim was interviewed by Bedford Heights police detectives. The interview was video-recorded, played for the trial court, and entered into evidence. During the interview, with regard to her injuries, the victim stated that she had some bruising on her buttocks and lower back and redness on her chest. She made no mention of her internet conversations with "Mark."

{¶9} Colleen Brundege testified that she was a manager at Shamrock Staffing. On October 24, at some point in the afternoon, she repeatedly tried calling the victim, but the victim did not answer the office phone or her cell phone. According to Brundege, the victim finally called her back and told her that a man had come into the office and "attacked her and tried to rape her." Brundege went to the hospital to check on the

victim and saw her injuries, which included bite marks, bruises, and welt marks; the victim told her that the attacker whipped her with his belt. Brundege told the victim to take a few days off work.

{¶10} Kathleen Phan, an emergency room nurse, testified that she examined the victim. The victim reported that a stranger had raped her, bitten her, punched her in her vagina, choked her, and whipped her on her back and butt with his belt. Phan testified she observed, documented, and photographed injuries to the victim's breasts and right knee, bite marks on her left chest wall, and right buttock, welts on her lower back and buttocks, and redness and swelling to her vagina.

{¶11} Officer Kimberly Callieham of the Bedford Heights Police Department testified she responded to Shamrock Staffing on October 24 and was met by the victim, who reported she had been raped and beaten. Patrolman Callieham transported the victim to the hospital.

{¶12} Jason Howell, a forensic investigator, testified that he assisted the Bedford Heights Police in executing a search warrant at Kurtz's home and performed a forensic search of Kurtz's computer, which had been partially wiped clean, but he was able to recover searches of the name "Alana Callahan."

{¶13} After the state rested and the defense rested without calling any witnesses, the trial court returned its verdict. The court acquitted Kurtz of all sexually-related crimes, finding that "this Court cannot accept as credible the testimony of the purported victim * * *." The court then found that "consent of the victim is not a defense" to the

crime of felonious assault and that the victim's injuries rose to the level of "serious physical harm and thus are sufficient to support a finding of guilty as to Count 5, felonious assault."

{¶14} The trial court referred Kurtz for a presentence investigation report and a court psychiatric report. At the sentencing hearing, the trial court sentenced Kurtz to five years of community control sanctions, with conditions.

{¶15} Kurtz filed a timely appeal of his conviction and raises two assignments of error, in which he challenges the sufficiency and the manifest weight of the evidence.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶16} In evaluating a sufficiency of the evidence argument, courts are not to assess whether the state's evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. The weight and credibility of the evidence are left to the trier of fact. *State v. Jackson*, 8th Dist. No. 86542, 2006- Ohio-1938, ¶ 23.

{¶17} Kurtz argues that the state presented insufficient evidence to sustain his conviction for felonious assault. Specifically, Kurtz claims that the state presented insufficient evidence to show that the victim suffered serious physical harm as an element

of felonious assault.

{¶18} R.C. 2903.11(A)(1), which prohibits felonious assault, states that "no person shall knowingly cause serious physical harm to another or another's unborn." As relevant to this case, R.C. 2901.01(A)(5)(d) defines "serious physical harm to persons" as "[a]ny physical harm that * * * involves some temporary, serious disfigurement[.]"

{¶19} In support of his argument that he did not cause serious physical harm to the victim, Kurtz cites this court's decision in *State v. Ivey*, 98 Ohio App.3d 249, 648 N.E.2d 519 (8th Dist. 1994), where, in reversing a child endangering conviction, this court found that a child who suffered welts and lacerations to his buttocks and lower legs, caused by a belt, did not amount to serious physical harm or threaten a substantial risk of the same as defined by R.C. 2901.01(E). *Id.* at 255-256.

{¶20} In this case, the state proceeded under the theory that the injuries Kurtz inflicted on the victim amounted to a temporary, serious disfigurement. After the beating, the victim called her manager and the police. A police officer drove her to the hospital, where she was examined. The nurse photographed and extensively documented her injuries. The injuries that the victim complained of included redness and bruising to her breasts and right knee, bite marks on her left chest wall and right buttock, redness and swelling to her vagina, and significant and numerous welts across her lower back and buttocks. The pictures entered into evidence at trial showed extensive welts across the majority of the victim's buttocks and back, bite marks on her chest and buttock, redness across her chest, and bruising.

**{¶21}** In reviewing this case in a light most favorable to the prosecution, we find that the victim's injuries amounted to a substantial, temporary disfigurement and, therefore, met the element of serious physical harm.

**{¶22}** Thus, we find that there was sufficient evidence to sustain a conviction for felonious assault.

**{¶23}** The first assignment of error is overruled.

B. Manifest Weight of the Evidence

**{¶24}** In his second assignment of error, Kurtz contends that his conviction for felonious assault was against the manifest weight of the evidence because the trial court erred in finding the victim suffered serious physical harm.   We disagree.

**{¶25}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion.   *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12.   A reviewing court

> weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Thompkins*, 78 Ohio St.3d 380, 388, 1997-Ohio-52, 678 N.E.2d 541.   A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction."   *Id.*

**{¶26}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist.

No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

{¶27} The victim testified that Kurtz pushed her twice, causing her to fall over a chair. He pulled her pants and bra down, punched her in her vagina, bit her breasts and buttocks, choked her, spanked, and whipped her back and butt with his belt. She testified that it felt as though he was trying to bite her nipples off, the beating hurt, and she had residual bruising and redness. She further testified that she did not want Kurtz to push, bite, choke, whip, punch, or hit her, she tried to fight him off, and she was crying.

{¶28} Even if the victim consented to the sexual conduct, as the trial court found, there was ample evidence that she did not consent to Kurtz's physical beating. The trial court found that her injuries amounted to serious physical harm and, in deference to the trier of fact, we cannot determine that the court lost its way in making that finding.

{¶29} Therefore, the conviction for felonious assault was not against the manifest weight of the evidence.

{¶30} The second assignment of error is overruled.

{¶31} Judgment affirmed.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR